**Not for Publication**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| **UNITED STATES OF AMERICA**<br><br>v.<br><br>**GABRIEL HENDERSON** | **Criminal No. 15-0329 (ES)**<br><br>**OPINION** |

**HAYDEN, DISTRICT JUDGE**

      Before the Court is defendant Gabriel Henderson's ("Defendant") motion for reduction of sentence pursuant to 18 U.S.C. § 3582(c)(1)(A). (D.E. No. 58 ("Def. Mov. Br.")). The Government opposes the motion. (D.E. No. 61 ("Gov. Opp. Br.")). Having considered the parties' submissions, the Court decides this matter without oral argument. *See United States v. Barner*, 656 F. App'x 600, 602 (3d Cir. 2016). For the following reasons, the Court DENIES the motion.

### I. Background

      On May 18, 2015, the Government filed a one-count criminal complaint charging Defendant and six others with conspiracy to distribute, and possess with intent to distribute, heroin contrary to 21 U.S.C. §§ 841(a)(1) and (b)(1)(B) and in violation of 21 U.S.C. § 846. (D.E. No. 1). On June 30, 2015, Defendant waived prosecution by indictment and pleaded guilty to a one-count information, admitting that "[f]rom in or about December 2014 through on or about May 20, 2015, [he] conspired to distribute, and to possess with intent to distribute, 100 grams or more of heroin." (D.E. No. 49, Plea Agreement at 7; *see also* D.E. Nos. 47 & 48). On September 7, 2016, the Court sentenced Defendant to 180 months' imprisonment and five years of supervised release. (D.E. No. 53; *see also* D.E. No. 54). Since his arrest on May 21, 2015, Defendant has been, and is currently, incarcerated at FCI Ray Brook, where he has served approximately 40 percent of his

sentence. (Def. Mov. Br. at 4; Gov. Opp. Br. at 2). Defendant's current projected release date is February 29, 2028. (Def. Mov. Br. at 4; Gov. Opp. Br. at 2). Defendant now moves this Court for a reduction of sentence under 18 U.S.C. § 3582(c)(1)(A) on the basis of his underlying medical conditions and the COVID-19 pandemic. (*See generally* Def. Mov. Br.).[1] The Government opposes the Motion.

## II.     Legal Standards

Once a term of imprisonment has been imposed, the Court may modify it only under very limited circumstances. *In re Morris*, 345 F. App'x 796, 797–98 (3d Cir. 2009) (citing 18 U.S.C. § 3582(c)). Relevant here, 18 U.S.C. § 3582(c)(1) provides that in any case:

> (A) the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that--
>
>> (i) extraordinary and compelling reasons warrant such a reduction;
>>
>> [. . .]
>
> and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission . . . .

The United States Sentencing Commission has promulgated a policy statement that, in relevant part, allows a court to grant compassionate release or a sentence reduction where: (i) extraordinary or compelling reasons warrant a reduction in a defendant's sentence; (ii) the defendant is not a

---

[1] Defendant initially filed a *pro se* motion for release. (D.E. No. 56). Pursuant to the District of New Jersey's Standing Order 2020-08, the Court informed the Office of the Federal Public Defender of the pending *pro se* motion and allowed counsel an opportunity to filed renewed motion papers. Because Defendant is now represented by counsel and because counsel's motion incorporates Defendant's *pro se* motion, the *pro se* motion is moot.

danger to the safety of others or to the community; and (iii) release from custody complies with the section 3553(a) factors. *United States v. Brummett*, No. 6:07-0103, 2020 WL 1492763, at *2 (E.D. Ky. Mar. 27, 2020) (citing U.S. SENTENCING GUIDELINES MANUAL ("U.S.S.G.") § 1B1.13 (U.S. SENTENCING COMM'N 2018)).

Additionally, the Government interprets Defendant's motion to include a request for the Court to direct the BOP to place the Defendant in home confinement. (Gov. Opp. Br. at 16–17). To the extent Defendant does make such a request, the Court agrees with the Government that the Court has no authority to grant such relief. As set forth above, the plain language of § 3582(c)(1)(A) gives the Court authority only to "reduce" the Defendant's "term of imprisonment," not to modify Defendant's place of incarceration. And "only the Bureau of Prisons [("BOP")] has the actual authority to designate the place of incarceration." *United States v. Voda*, 994 F.2d 149, 151–52 (5th Cir. 1993); *see also United States v. Miles*, No. 11-0581, 2020 WL 1989290, at *1 n.2 (S.D.N.Y. Apr. 27, 2020). Thus, the Court considers Defendant's motion as one brought pursuant to § 3582(c)(1)(A), and applies the legal standards described *supra*.

**III.    Analysis**

    **A.    Exhaustion**

Before proceeding to the merits of a motion for a reduction in sentence, a defendant must meet § 3582(c)(1)(A)'s exhaustion requirement. *United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020). This requires either that 30 days have passed since the receipt of a compassionate release request by a warden, or that the defendant has exhausted all administrative remedies. 18 U.S.C. § 3582(c)(1)(A). Here, although the parties provide different dates for when the warden at FCI Ray Brook received Defendant's request, they agree that 30 days have passed since the receipt of any such request, and thus this requirement is satisfied. (Def. Mov. Br. at 18–20; Gov.

Opp. Br. at 3); *see also United States v. Epstein*, No. 14-0287, 2020 WL 1808616, at *4 (D.N.J. Apr. 9, 2020) ("[U]nder the statute, the longest period of time that Defendant will need to wait before filing his motion is 30 days. . . . This 30-day exception to the statutory exhaustion requirement already provides a built-in 'accelerant to judicial review,' which 'reflects congressional intent for the defendant to have the right to a meaningful and prompt judicial determination of whether he should be released.'" (quoting *United States v. Russo*, No. 16-0441, 2020 WL 1862294, at *1 (S.D.N.Y. Apr. 14, 2020))). Accordingly, the Court may address the merits of the motion.

### B. Extraordinary and Compelling Reasons for Reduction

Congress directed the Sentencing Commission to define the "extraordinary and compelling reasons" standard. *United States v. Alexander*, No. 19-0032, 2020 WL 2507778, at *3 (D.N.J. May 15, 2020). The Sentencing Commission issued a policy statement in which an application note lists three specific circumstances that qualify as extraordinary and compelling; generally speaking, the enumerated circumstances include: (i) a terminal illness or a serious medical condition that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover; (ii) the defendant is at least 65 years old, is experiencing a serious deterioration in physical or mental health because of the aging process, and has served at least 10 years or 75 percent of his or her term of imprisonment, whichever is less; or (iii) certain family circumstances exist where the defendant would be the only available caregiver for his or her minor child, spouse, or registered partner. U.S.S.G. § 1B1.13, Application Note 1(A)–(C). In addition, the Sentencing Commission included a catchall provision, which provides that "other reasons" may be sufficient if "[a]s determined by the Director of the [BOP], there exists in the defendant's case an extraordinary and

compelling reason other than, or in combination with, the reasons described in [the enumerated] subdivisions." *Id.*, Application Note 1(D).[2] In the wake of COVID-19, "[t]he 'extraordinary and compelling reasons' inquiry logically has two components: (a) identification of a medical condition that renders the defendant particularly vulnerable to serious consequences if infected with COVID-19; and (b) the likelihood of COVID-19 infection, with particular reference to conditions in the institution in which the defendant is incarcerated." *United States v. Moore*, No. 19-101, 2020 WL 4282747, at *3 (D.N.J. July 27, 2020). The Court considers each in turn.

To start, Defendant cites to two underlying medical conditions that he argues make him particularly susceptible to serious illness if he were to contract COVID-19—asthma and obesity. (Def. Mov. Br. at 5). Defendant also explains that he contracted viral pneumonia and tested positive for COVID-19 in April. (*Id.* at 4). According to Defendant, the fact that he has already contracted the virus does not mean that he is immune from catching it again, and Defendant fears that he may have sustained "permanent damage" due to the disease, making him even more susceptible to additional complications if he were to contract it again. (*Id.* at 3 & 6). The Court deems Defendant's obesity as most concerning.

With a BMI of 38 Defendant is considered medically obese. (Def. Mov. Br. at 5; Gov. Opp. Br. at 13). As acknowledged by both parties, obesity appears on the Centers for Disease

---

[2] Section 1B1.13 was not updated after the First Step Act was passed, and it therefore was drafted to address motions made by the BOP, not motions made by a defendant. *United States v. Rodriguez*, No. 03-0271, 2020 WL 1627331, at *3 (E.D. Pa. Apr. 1, 2020). Thus, some courts have determined that the policy statement is now inapplicable. *See United States v. Redd*, 444 F. Supp. 3d 717, 724 (E.D. Va. 2020). Other courts have disagreed as to whether a court—rather than the BOP—can evaluate what falls into the catchall provision because the policy statement indicates that any "other reasons" are sufficient "*[a]s determined by the Director of the [BOP]*," U.S.S.G. § 1B1.13, Application Note 1(D) (emphasis added). *Compare Rodriguez*, 2020 WL 1627331, at *3–4 (concluding that "the Court may independently assess whether 'extraordinary and compelling reasons' exist"), *with United States v. Mollica*, No. 14-0329, 2020 WL 1914956, at *4 (N.D. Ala. Apr. 20, 2020) ("[T]his court agrees with our sister courts and finds that Subsection D requires a finding of extraordinary circumstances *by the BOP*."). Defendant argues either that the policy statement is inapplicable, or that the Court has the authority to determine extraordinary and compelling circumstances under the catchall provision. (Def. Mov. Br. at 26–28). The Court declines to weigh in on this issue and denies the motion on other grounds.

5

Control and Prevention's ("CDC") list of medical conditions that place people of any age at increased risk for severe illness from COVID-19. *See People With Certain Medical Conditions*, CDC, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html) (last visited August 24, 2020). The Government also acknowledges that Defendant's obesity is a condition that the CDC has determined is "consistently and directly linked to an increased risk of severe illness from COVID-19." (Gov. Opp. Br. at 12). Notwithstanding, the Government argues that Defendant's obesity is not an extraordinary and compelling reason for release because Defendant "has offered no reason why he cannot reverse or otherwise 'recover' from his obesity through proper diet and exercise," and there is no indication that "his obesity is not an irreversible side-effect of some other medical condition or medication." (Gov. Opp. Br. at 13).

      This argument is unconvincing. It ignores Defendant's inability to control what meals he is offered and what exercise regimen he can pursue (in the present circumstances, understandably curtailed). It puts on Defendant's shoulders responsibility for his obesity and the means of eliminating it as if this medical condition is regulated by simple will power. The Court rejects this based on common sense and the host of information readily available electronically and in print about the rate of obesity in the *unincarcerated* population of the United States. Here, what matters is that Defendant's medical condition places him on the CDC's list of people at increased risk of severe illness from COVID-19—a list which courts around the country have used as a guidepost for determining whether extraordinary and compelling reasons exist in COVID-19 compassionate release cases. *See e.g.*, *United States v. Dent*, No. 18- 20483, 2020 WL 4783921, at *3 (E.D. Mich. Aug. 17, 2020) (relying on the CDC's classifications to conclude that defendant's cited medical condition was insufficient to meet the extraordinary and compelling standard); *United States v.*

*Henries*, No. 00-0788, 2020 WL 4727090, at *2 (D.N.J. Aug. 14, 2020) (same); *United States v. Henry*, No. 04-0004, 2020 WL 4748537, at *5 (D. Md. Aug. 17, 2020) ("This Court's analysis of an individual's virus-related concerns is heavily guided by the CDC's published risk factors for incurring a severe, life-threatening case of COVID-19.").

That said, Defendant's medical condition is only one piece of the analysis and must be evaluated in light of the conditions at FCI Ray Brook and the likelihood of infection. *Moore*, 2020 WL 4282747, at *3. The Government argues that the BOP's "aggressive measures" apply to, and have been implemented at, FCI Ray Brook, thereby limiting the risk of infection to inmates. (Gov. Opp. Br. at 5).[3] For support, the Government points to BOP data showing that as of August 13, 2020, FCI Ray Brook had one active case of COVID-19 among inmates and no active cases among staff. (*Id.* (citing COVID-19 Cases, FEDERAL BUREAU OF PRISONS, *available at* https://www.bop.gov/coronavirus/, last visited August 13, 2020)). According to the Government, the BOP data also shows that since the onset of the pandemic, and as of August 13, 2020, 12 inmates and 10 staff members have tested positive for and have recovered from COVID-19.[4] (*Id.*) Thankfully, there have been no staff or inmate deaths resulting from COVID-19 at FCI Ray Brook. (*Id.*). Still, Defendant argues that FCI Ray Brook's measures are insufficient, that the facility "is experiencing a significant level of confirmed coronavirus cases," and suggests that the facility's positive test results may be skewed by inadequate testing. (Def. Mov. Br. at 4 & 30). Defendant also relies on the fact that he has contracted the virus once while at FCI Ray Brook to suggest that

---

[3] The Government has not submitted any sworn declaration by someone with personal knowledge of the conditions at FCI Ray Brook or knowledge of the status of the outbreak at the facility. The Court accepts the Government's arguments about FCI Ray Brook for discussion purposes only.

[4] Defendant provides similar numbers, indicating that FCI Ray Brook has had 13 inmates and 10 staff members test positive for the virus as of July 16, 2020. (Def. Mov. Br. at 4). As of August 25, 2020, the BOP website indicates that there are two active cases among inmates, no active cases among staff, and that 14 inmates and 10 staff members have recovered from the virus.

his fear of contracting the virus within the facility is not speculative, but actually "ha[s] been realized" and may be realized again.  (*Id.* at 14).

While acknowledging the reported decisions that go in both directions as to the adequacy of protection against the virus in FCI Ray Brook, as the Government points out, Defendant has contracted and recovered from COVID-19.  As of this writing, there is new uncertainty about the possibility of re-infection, and this record is thin with respect to the issue.  However, even were Defendant to supplement with medical information about his likelihood of re-infection, and/or the science clearer as to the threat of re-infection generally, there remains a critical, and ultimately dispositive consideration under the legal framework.  Based on the record, the Court concludes that an analysis of the § 3553(a) factors and dangerousness precludes the requested relief.  *See United States v. Mayfield*, No. 07-0801, 2020 WL 3604090, at *3 (D.N.J. July 2, 2020).

    **C.**    **Section 3553(a) Factors and Dangerousness**

The applicable § 3553(a) factors include:

> (1) the nature and circumstances of the offense and the history and characteristics of the defendant;
>
> (2) the need for the sentence imposed--
>
>> (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>>
>> (B) to afford adequate deterrence to criminal conduct;
>>
>> (C) to protect the public from further crimes of the defendant; and
>>
>> (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner . . . .

18 U.S.C. § 3553(a); *United States v. Brown*, Nos. 07-0890, 07-0019, 2020 WL 2466081, at *4 (D.N.J. May 13, 2020).  And "[t]he court shall impose a sentence sufficient, but not greater than

necessary, to comply with the purposes set forth in paragraph (2)." 18 U.S.C. § 3553(a). Additionally, to evaluate dangerousness pursuant to 18 U.S.C. § 3142(g), the Court considers: (i) the nature and circumstances of the offense; (ii) the weight of the evidence against the person; (iii) the history and characteristics of the person; and (iv) the nature and seriousness of the danger to any person or the community that would be posed by the person's release.

The transcript of Defendant's sentencing hearing is instructive in this regard. After extensive argument from defense counsel, the Court sentenced Defendant below the advisory guidelines range of 188 to 235 months' imprisonment, to 180 months' imprisonment. (Gov. Opp. Br. at 2). In fashioning the sentence, the Court considered the need to promote respect for the law, citing to the Defendant's recidivism and his status as a career offender. In particular, the Court described the Defendant's criminal history as being "off the charts," and highlighted the fact that less than a year after doing time for aggravated manslaughter, Defendant was out committing new crimes. While acknowledging the details of his participation in the drug conspiracy being prosecuted, which resulted in a variance of eight months below the low end of the stipulated guidelines range, the Court sentenced based upon the extent of his serious and persistent criminal involvement that was manifest in the Presentence Report.

Despite Defendant's arguments to the contrary, the reasons proffered for Defendant's 180-month sentence hold true today. Even considering COVID-19, cutting Defendant's sentence by approximately 60 percent would simply fail to reflect the seriousness of Defendant's crime and the need to promote respect for the law and deter this career offender from committing future crimes. *Brown*, 2020 WL 2466081, at *4 (concluding that the § 3553(a) factors weighed against granting defendant's motion for a reduced sentence); *United States v. DeSciscio*, No. 88-0239, 2020 WL 3893711, at *7 (D.N.J. July 10, 2020) (emphasizing the need to protect the safety of the

9

public from even a possibility of recidivism in denying a motion for compassionate release). Accordingly, an analysis of the § 3553(a) factors warrants denial of the Motion.

Finally, turning to dangerousness under § 3142(g), the same considerations, specifically the seriousness of the crime committed here and the criminal history of the Defendant, which includes a manslaughter conviction, demonstrate that Defendant could present a danger to others if released before serving his full sentence. *United States v. Pass*, No. 10-0739, 2020 WL 2332001, at *3 (E.D. Pa. May 11, 2020).

## IV. Conclusion

For the foregoing reasons, Defendant's motion is DENIED. An appropriate Order accompanies this Opinion.

Dated: August 26, 2020  /s/ *Katharine S. Hayden*
Katharine S. Hayden, U.S.D.J.