Not for Publication

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| UNITED STATES OF AMERICA, | Criminal No.: 15-0329 (ES) |
| Plaintiff, | |
| v. | OPINION |
| GABRIEL HENDERSON, | |
| Defendant. | |

SALAS, DISTRICT JUDGE

Before the Court is defendant Gabriel Henderson's motion for compassionate release. (D.E. No. 64 ("Motion" or "Mot.")). The Government opposed the Motion and Defendant replied. (D.E. No. 66 ("Gov. Opp."); D.E. No. 71 ("Reply")). Having considered the parties' submissions, the Court decides the Motion without oral argument. *See* Fed. R. Crim. P. 43(b)(4); *United States v. Styer*, 573 F.3d 151, 154 (3d Cir. 2009). For the following reasons, the Court DENIES the Motion.

I.  BACKGROUND

On June 30, 2015, Defendant pled guilty to conspiracy to distribute, and to possess with intent to distribute, 100 grams or more of a substance containing a detectable amount of heroin, contrary to 21 U.S.C. §§ 841(a)(1), (b)(1)(B), and 846. (D.E. No. 49 ("Plea Agmt.") at 1; Mot. at 1–2).[1] Defendant's Presentence Investigation Report ("PSR") indicated a total offense level of 31,

---

[1]  At his plea hearing, Defendant:

> voluntarily waive[d] the right to file any appeal, any collateral attack, or any other writ or motion, including but not limited to an appeal under 18 U.S.C. § 3742 or a motion under 28 U.S.C. § 2255, which challenges the sentence imposed by the sentencing court if that sentence falls within or below the Guidelines range that results from a total Guidelines offense level of 31.

including a Career Offender Enhancement as required by Section 4B1.1 of the United States Sentencing Guidelines ("U.S.S.G."), and a criminal history category of VI. (Mot. at 2 (citing PSR ¶¶ 105, 108 & 119)). Defendant's total offense level and criminal history category provided a guideline imprisonment range of 188 to 235 months. (*Id.*). On September 7, 2016, the Court varied downward and sentenced Defendant to a term of 180 months of imprisonment to be followed by five years of supervised release. (D.E. No. 54). Defendant is under the custody of the Bureau of Prisons ("BOP") and incarcerated at the Federal Correctional Institution, Ray Brook ("FCI Ray Brook") in New York. (Mot. at 19).[2]

Defendant filed his first *pro se* submission for compassionate release on April 30, 2020, and counsel filed a supplemental motion for a reduction of sentence under 18 U.S.C. § 3582(c)(1)(A), as amended by the First Step Act ("FSA"), which the Government opposed. (D.E. Nos. 56, 58 & 61). Defendant sought relief due to the COVID-19 pandemic and his underlying health issues that he claimed put him at "higher risk of severe illness and death." (D.E. No. 58 at 3). The Honorable Judge Katharine S. Hayden denied Defendant's first motion in an Opinion and Order dated August 26, 2020. (D.E. Nos. 62 & 63). Thereafter, Defendant filed the instant Motion, which is fully briefed. (Mot.; Gov. Opp.; Reply).

## II.     LEGAL STANDARD

Once a term of imprisonment has been imposed, the Court may modify it only under very limited circumstances. *In re Morris*, 345 F. App'x 796, 797–98 (3d Cir. 2009) (citing 18 U.S.C. § 3582(c)). Relevant here, 18 U.S.C. § 3582(c)(1) provides that in any case:

> (A) the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has

---

(Plea Agmt. at 7).

[2]     The BOP estimates that Defendant will be released on February 29, 2028. *Inmate Locator*, Federal Bureau of Prisons, https://www.bop.gov/inmateloc/ (last visited May 23, 2022) (BOP Register Number 67372-050).

>fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that--
>
>>(i) extraordinary and compelling reasons warrant such a reduction;
>>
>>[. . .]
>>
>>and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission . . . .

Per Congressional directive and prior to the enactment of the FSA, the Sentencing Commission issued a policy statement addressing motions filed by the Director of the BOP. U.S.S.G. § 1B1.13 (U.S. Sent'g Comm'n 2018). However, the Sentencing Commission has not updated its policy statement since the FSA expanded relief under Section 3582(c)(1)(A) by permitting prisoner-filed motions for sentence reductions. Thus, the Third Circuit has joined the other Courts of Appeals that have held that, because the Sentencing Commission's policy statement "explicitly limits its application to [BOP]-initiated motions," the policy statement does not bind the Court when considering prisoner-initiated motions. *United States v. Andrews*, 12 F.4th 255, 259 (3d Cir. 2021). Accordingly, no applicable policy statement exists for Section 3582(c)(1)(A) motions initiated by a defendant.

Nonetheless, defendants still bear the statutory burden to demonstrate that they are entitled to a sentence reduction by satisfying procedural prerequisites and showing extraordinary and compelling circumstances. 18 U.S.C. § 3582(c)(1)(A); *see United States v. Epstein*, No. 14-0287, 2020 WL 1808616, at *2 (D.N.J. Apr. 9, 2020). In addition, before granting a sentence reduction, the Court must find that "the applicable sentencing factors under § 3553(a) warrant a reduction."

3

*United States v. Sparrow*, No. 18-0653, 2020 WL 4364328, at *2 (D.N.J. July 30, 2020); 18 U.S.C. § 3582(c)(1)(A).

### III.   ANALYSIS

Defendant argues that he is entitled to compassionate release based on the Third Circuit's decision in *United States v. Nasir*, 982 F.3d 144 (3d Cir. 2020),[3] which clarified the predicate offenses that warrant application of the career offender sentencing enhancement. (Mot. at 7–10; *see id.* at 16–19). Defendant also argues that the isolating conditions at FCI Ray Brook, in response to the COVID-19 pandemic, warrant his early release. (*Id.* at 10–16).

#### A.   Exhaustion

Before considering the merits of a motion for a reduction in sentence, the Court must determine whether Defendant has met Section 3582(c)(1)(A)'s exhaustion requirement. Section 3582(c)(1)(A) requires either that the defendant exhaust all administrative remedies, or that thirty days have passed since the submission of a request to the warden. *United States v. Harris*, 973 F.3d 170, 171 (3d Cir. 2020); *United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020). Defendant submitted a request for a reduced sentence to the warden at FCI Ray Brook on June 24, 2021. (Mot. at 21 (ECF Pagination)). Defendant had not received a response when he filed this Motion more than thirty days later. (*Id.* at 4–5). The Government does not appear to dispute that Defendant adequately exhausted. (*See generally* Gov. Opp.). Thus, the Court finds that Defendant has fulfilled the exhaustion requirement and will now turn to the Motion's merits.

---

[3] Following the Third Circuit's decision in 2020, the Supreme Court granted the Government's petition for writ of certiorari, vacated judgment, and remanded to the Court of Appeals for the Third Circuit so that it could consider *Greer v. United States*, 141 S. Ct. 2090 (2021), with respect to issues unrelated to the career offender enhancement. Accordingly, on remand, the Third Circuit's analysis of Nasir's career offender enhancement arguments remained the same. *Compare United States v. Nasir*, 17 F.4th 459, 468–72 (3d Cir. 2021), *with Nasir*, 982 F.3d at 156–60.

### B. Extraordinary and Compelling Circumstances

Before Congress passed the FSA, it directed the Sentencing Commission to define the "extraordinary and compelling" standard. *United States v. Alexander*, No. 19-0032, 2020 WL 2507778, at *3 (D.N.J. May 15, 2020). The Sentencing Commission issued a policy statement in which an application note lists three specific extraordinary and compelling circumstances that a court may consider "[u]pon motion of the Director of the [BOP]" under Section 3582(c)(1)(A) including: (i) medical conditions, (ii) complications from old age, and (iii) certain familial challenges. U.S.S.G. § 1B1.13 cmt. n.1(A)–(C). In addition, the policy statement includes a catchall provision, which provides that "other reasons" may be sufficient if "[a]s determined by the Director of the [BOP], there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons described in [the enumerated] subdivisions." *Id.* cmt. n.1(D). While the Court is not constrained by the Sentencing Commission's policy statement, it will refer to it as guidance in determining whether extraordinary and compelling reasons exist for a sentence reduction. *See Andrews*, 12 F.4th at 258–59.

### 1. The Career Offender Enhancement

The Court begins by examining whether the Third Circuit's decision in *Nasir* creates an extraordinary and compelling reason to warrant Defendant's release. As a preliminary matter, the career offender sentencing enhancement applies when:

> (1) the defendant was at least eighteen years old at the time the defendant committed the instant offense of conviction; (2) the instant offense of conviction is a felony that is either a crime of violence or a controlled substance offense; and (3) the defendant has at least two prior felony convictions of either a crime of violence or a controlled substance offense.

U.S.S.G. § 4B1.1(a). In *Nasir*, the Third Circuit held that "inchoate crimes are not included in the definition of 'controlled substance offenses' given in section 4B1.2(b) of the sentencing

5

guidelines." 982 F.3d at 160.  Inchoate offenses include attempt, conspiracy, or solicitation to commit a crime because they involve "[a] step toward the commission of another crime, the step itself being serious enough to merit punishment." *Id.* at 156, n.10 (quoting Offense, Black's Law Dictionary (11th ed. 2019)).

Defendant argues that the offense for which he is incarcerated is an inchoate crime; thus, if he were sentenced today, he would not be considered a career offender under *Nasir*. (Mot. at 8–9).  As such, Defendant maintains that "the resulting disparity in the guideline range constitutes an extraordinary and compelling reason" for a sentence reduction.  (*Id.* at 9).  In support, Defendant cites non-binding, out-of-circuit cases that have granted early release for defendants with "stacked" sentences after the FSA's amendment to 18 U.S.C. § 924(c), which eliminated a mandatory 25-year minimum sentence for *each* additional charge under Section 924(c), unless a defendant already had a final conviction under Section 924(c) at the time of the offense.  (*Id.* (citing, for example, *United States v. Arey*, 461 F. Supp. 3d 343, 350 (W.D. Va. 2020))).  The Government opposes, arguing, among other things, that a motion for compassionate release is an improper vehicle to challenge Defendant's sentence.  (Gov. Opp. at 11–12).

Even assuming that Defendant would not be considered a career offender if sentenced post-*Nasir*, *Nasir*'s nonretroactive interpretation of the career offender enhancement under the Sentencing Guidelines does not constitute extraordinary and compelling circumstances under the FSA.  *See United States v. Muhammad*, No. 21-1311, 2022 WL 296593, at *2 (3d Cir. Feb. 1, 2022) (noting that the Third Circuit "*never* held [that] *Nasir* applies retroactively on collateral review" (emphasis added)).  As noted by the Honorable Judge Vazquez, *Nasir* involved "an interpretation of the Guidelines, not a statute."  *United States v. Jenkins*, No. 13-646, 2021 WL 5833424, at *5 (D.N.J. Dec. 9, 2021).  And the Third Circuit recently concluded—in direct tension

6

with Defendant's out-of-circuit authority—that statutory "nonretroactive changes" to mandatory minimum sentences under Section 924(c) "cannot be a basis for compassionate release." *Andrews*, 12 F.4th at 261 ("[W]e will not construe Congress's nonretroactivity directive as simultaneously creating an extraordinary and compelling reason for early release."). Thus, guided by the Third Circuit's holding that "a nonretroactive change *in a statute* cannot be an extraordinary and compelling reason to justify release," the Court is not persuaded that a nonretroactive interpretation *of the Guidelines* warrants release under the FSA. *Jenkins*, 2021 WL 5833424, at *5 (emphasis added).

This conclusion is consistent with other courts in the Third Circuit faced with the same or similar inquiry. *See Jenkins*, 2021 WL 5833424, at *5; *United States v. Muhammad*, No. 14-0502, 2021 WL 568076, at *3 n.4 (D.N.J. Feb. 16, 2021) ("This Court is not persuaded by [d]efendant's argument that the Third Circuit's decision in . . . *Nasir*[ ] constitutes a 'extraordinary and compelling reason' for a sentence reduction, particularly given this [c]ourt's decision to vary from the Guidelines to give [d]efendant 'lesser exposure for purposes of incarceration' at the time of sentencing."); *United States v. Gordon*, No. 15-0496, 2022 WL 1062976, at *2 (E.D. Pa. Apr. 8, 2022) (concluding that the *Nasir* decision does not "give rise to 'extraordinary and compelling' reasons to grant [defendant] release" pursuant to the FSA); *United States v. Porter*, 442 F. Supp. 3d 903, 907–08 (W.D. Pa. 2020) ("Defendant's claim concerning the projected term of imprisonment is not an exceptional reason justifying release pending sentencing."); *see also United States v. Slone*, No. 16-0400, 2021 WL 1374634, at *5 n.38 (E.D. Pa. Apr. 12, 2021) (stating, before *Andrews*, that the court lacked confidence that "a decision from our Court of Appeals could alone constitute an extraordinary and compelling reason for compassionate release"). Moreover, the Third Circuit has rejected this argument where, as here, Section 3553(a) acts as an independent

7

bar to early release. *See United States v. Muhammad*, No. 21-1311, 2022 WL 296593, at *2 (3d Cir. Feb. 1, 2022).[4]

### 2. Isolating Conditions at FCI Ray Brook

Defendant's second argument is that the COVID-19 pandemic has resulted in "harsh conditions of confinement" at FCI Ray Brook that has made his "term in custody . . . more arduous than the [C]ourt intended" when imposing his sentence. (Mot. at 10). Specifically, Defendant states he has been subject to "constant lockdowns, cold meals, restrictions on recreation, no visitation, no programming, and other unusually severe conditions of confinement." (*Id.*). The Government does not squarely address Defendant's argument as to the allegedly harsh conditions of confinement at FCI Ray Brook, but generally maintains that the COVID-19 pandemic does not itself constitute an extraordinary and compelling reason for compassionate release. (Gov. Opp. at 12–16).

Defendant is incarcerated at FCI Ray Brook, a medium security federal correctional institution with a detention center.[5] The facility currently houses 894 inmates.[6] Since the onset of the pandemic, FCI Ray Brook, has had 210 inmates and 74 staff members test positive for, and recover from, COVID-19.[7] Currently, the facility has no inmates and five staff members infected

---

[4] Perhaps recognizing that his argument under *Nasir* is more appropriate for direct appeal or in the habeas forum, Defendant argues that his plea waiver does not bar the Court's consideration of his Motion under the FSA. (Mot. at 16–19). Indeed, the Third Circuit recently noted that a motion to vacate, set aside, or correct a sentence based on an improper career offender determination "can be raised only in a § 2255 motion." *United States v. Henderson*, 858 F. App'x 466, 469 n.2 (3d Cir. 2021) (collecting cases); *Gordon*, 2022 WL 1062976, at *2 ("Merits aside, this argument cannot be raised in a motion for compassionate release."). The Court, however, has considered the instant Motion under the applicable standard—that is, whether the Defendant's circumstances are extraordinary and compelling and thus justify early release.

[5] *FCI Ray Brook*, Federal Bureau of Prisons, https://www.bop.gov/locations/institutions/rbk/ (last visited May 23, 2022) (hereinafter "*FCI Ray Brook*").

[6] *Id.*

[7] *COVID-19 Cases*, Federal Bureau of Prisons, https://www.bop.gov/coronavirus/ (last visited May 23, 2022).

with COVID-19.[8] Despite any prior surge of positive COVID-19 cases at FCI Ray Brook, it appears that—at present—the facility is combating the spread of COVID-19 effectively.

In light of the global pandemic, the BOP has enacted three levels of operation, which reflect the facility's current infection prevention and modification procedures "to mitigate the risk and spread of COVID-19."[9] FCI Ray Brook is currently operating at a level 3, which is required if any one of three conditions are met, including (i) if the medical isolation rate is greater than seven percent; (ii) if the facility's vaccination rate is less than fifty percent; or (iii) if the community transmission rate is greater than or equal to one-hundred per 100,000 over the last seven days.[10] Level 3 operations involve, among other things, modifications to cohorting, recreation, and programming; facility-wide use of face masks; social distancing in all areas; and daily staff screenings.[11]

The Court acknowledges these unexpected limitations and the hardships they may impose on incarcerated individuals, Defendant included. However, they do not form a basis for extraordinary and compelling circumstances that warrant a sentence reduction. The COVID-19 pandemic has imposed certain limitations on a majority—if not all—incarcerated individuals in the last two years. "But courts cannot release every prisoner enduring these difficulties, 'because the Court would then be obligated to release every prisoner.'" *United States v. Burney*, No. 18-606, 2021 WL 4963253, at *8 (D.N.J. Oct. 25, 2021) (quoting *United States v. Wright*, No. 16-214-04, 2020 WL 1976828, at *5 (W.D. La. Apr. 24, 2020)); *United States v. Garrett*, No. 18-

---

[8] *Id.*

[9] *See* COVID-19 Operational Levels, Federal Bureau of Prisons, https://www.bop.gov/coronavirus/covid19_modified_operations_guide.jsp (last visited May 23, 2022). (hereinafter, "*BOP Operational Levels*").

[10] *Id.*; *see FCI Ray Brook*.

[11] *BOP Operational Levels*.

9

0125, 2021 WL 1625096, at *2 (D.N.J. Apr. 27, 2021) ("While it is regrettable that [d]efendant has not been able to see his family, has not been able to participate in any rehabilitation programs, and has been subjected to increased time locked in his cell, these procedures as applied in this case was a safety measure, not a punishment, meant to prevent or reduce the spread of COVID-19 at FCI Gilmer."); *see United States v. Hernandez*, No. 13-0200, 2022 WL 910091, at *6 (E.D. Pa. Mar. 29, 2022).

For the reasons stated above, Defendant has not demonstrated extraordinary and compelling circumstances for a sentence reduction. However, even if he had, the Court finds that the Section 3553(a) factors independently bar a sentence reduction.

### C.     Section 3553(a) Factors

Section 3553(a) directs the Court to impose a sentence that is sufficient, but not greater than necessary, to further the purposes of sentencing, *i.e.*, the need for the sentence to reflect the seriousness of the offense, promote respect for the law, provide just punishment, afford adequate deterrence, and protect the public. 18 U.S.C. § 3553(a)(1) and (a)(2)(A)–(D). Additionally, the Court must consider, *inter alia*, the nature and circumstances of the offense and the defendant's history and characteristics. § 3553(a)(1).

As noted above, on September 7, 2016, the Court sentenced Defendant to a term of 180 months of imprisonment to be followed by five years of supervised release. (D.E. No. 54). The Court varied downward by eight months from the sentencing guidelines range—188 to 235 months of imprisonment—based on Defendant's offense level of 31 and criminal history category of VI. (D.E. No. 69 ("Sent. Tr.") at 33:14–17).

In imposing a sentence of 180 months, the Court considered the serious nature of the offense. For example, the Court cited to the PSR for details of Defendant's involvement in the

offense, which reflected his knowledge about the location of drug supplies and drug transactions (*id.* at 19:4–24 & 22:9–14); his knowledge of organizational management (*id.* at 20:7–15); and his attempts to evade detection by changing phones and potentially removing a tracking device from an associate's car (*id.* at 21:5–22; 53:20–54:1). Even if Defendant's participation in the conspiracy had been minor, the Court emphasized that his actions still allowed "drugs to hit the streets." (*Id.* at 53:4–10). For this reason, the Court remains highly concerned with the need to protect the public and specific deterrence in order to prevent the Defendant from "perpetuating the very thing that [he said he] w[as] a victim of." (*Id.* at 53:10–11).

Defendant has repeatedly shown a lack of respect for the law, which the Court considered when imposing his sentence. Defendant was arrested for the instant offense on May 21, 2015 (*see* D.E. No. 40), less than one year after his release from serving nearly fifteen years for manslaughter (PSR at ¶ 111 (paroled July 16, 2014))—over a decade of which was in the administrative controlled segregation unit of a maximum-security prison. (Sent. Tr. at 49:22–50:6). Because the severity of his previous sentence did little to discourage Defendant from offending in the current case, the Court was skeptical that Defendant had any respect for the law. (*Id.* at 53:15–19). The Court's skepticism remains true today, and Defendant's sentence affords adequate deterrence from future criminal activities.

At sentencing, in considering whether the imposed sentence provided just punishment, the Court acknowledged Defendant's remorse, early acceptance of responsibility, and eagerness to plead guilty, and the fact that the instant offense involved a limited quantity of drugs and no weapon. (*Id.* at 54:5–10). The Court also lauded Defendant's efforts at self-improvement to support an eight-month variance from the lowest end of the range. (*Id.* at 54:14–18). Although the Court commends Defendant's continued participation in BOP programs (Mot. at 14–15) and

11

encourages Defendant to continue efforts at self-improvement, the Section 3553(a) factors, on balance, weigh against his release.

Even if the Court exercised its discretion to find an extraordinary and compelling reason for a sentence reduction, the Court's concerns under the Section 3553(a) factors have not changed since sentencing. Accordingly, the analysis under Section 3553(a) weighs heavily against granting Defendant's release.

### IV. CONCLUSION

Accordingly, Defendant's Motion is DENIED. An appropriate Order accompanies this Opinion.

Dated: May 23, 2022                  s/*Esther Salas*
                                                                          **Esther Salas, U.S.D.J.**